IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ELAINE WATTS, | ) | |
| | ) | |
|    Plaintiff, | ) | Civil Action No. |
| | ) | 1:17-cv-03574-SCJ |
| v. | ) | |
| | ) | |
| SILVERTON MORTGAGE | ) | JURY TRIAL DEMANDED |
| SPECIALISTS, INC., | ) | |
| | ) | |
|    Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF ELAINE WATTS'S RESPONSE TO DEFENDANT'S FEE AFFIDAVIT RE: SANCTIONS

V. Severin Roberts
Benjamin A. Stark
BARRETT & FARAHANY
1100 Peachtree Street NE, Ste. 500
Atlanta, GA 30309

Attorneys for Plaintiff
ELAINE WATTS

## I.  INTRODUCTION

"The inherent power to impose sanctions allows courts to vindicate their judicial authority, but such power must be used to fashion 'an appropriate sanction.' . . . A sanction which a party clearly cannot pay does not vindicate the court's authority because it neither punishes nor deters." *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002).  Plaintiff Elaine Watts ("Plaintiff" or "Ms. Watts") has already set forth the evidence of her extremely limited financial resources – [Doc. 94, pp. 25-26] – which shows that the $200,000-plus sanction sought by Defendant Silverton Mortgage Specialists, Inc. ("Silverton" or "Defendant") is absurdly beyond her ability to pay.  Because the Court has instructed Plaintiff not to re-argue her ability to pay [Doc. 130], she will not delve into detail on that issue, except to note that ability to pay is a necessary factor to consider when determining the "appropriate sanction." *Martin*, 307 F.3d at 1337.

In contrast, the Affidavit of Michael W. Johnston ("Johnston Affidavit" or "Fee Affidavit" or "Affidavit") [Doc. 126] is so critically flawed as to be useless in determining the appropriate size of the monetary sanction.  The Affidavit is utterly without evidentiary support, omits crucial information, claims outrageously excessive hours billed at rates vastly out of proportion with the local market, and is

1

downright contradictory at points.  For these reasons, Plaintiff respectfully submits that the Affidavit should be ignored and a sanction of approximately $5,000 should be assessed, in keeping with Plaintiff's limited ability to pay.

## II. THE MANY FLAWS WITH DEFENDANT'S FEE AFFIDAVIT RENDER IT ENTIRELY UNRELIABLE AND INAPPROPRIATE AS A BASIS FOR FASHIONING AN APPROPRIATE SANCTION

As will be noted in more detail *infra*, this Court is free to fashion whatever sanction it finds appropriate and need not base the sanction amount on Defendant's alleged fees under the lodestar method.  This is especially true where, as here, the Fee Affidavit is so replete with omissions, contradictions, and frankly outrageous claims that it is entirely unreliable.  The Affidavit should, therefore, not be considered and the sanction should be based on the amount the Court determines will deter Plaintiff based on her financial condition.  The problems with the Affidavit are set forth below.

### A. Complete Absence of Documentation Supporting Defense Counsel's Time Spent and Hourly Rate

"[T]he fee applicant bears the burden of establishing entitlement to an award and <u>documenting the appropriate hours expended and hourly rates</u>."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (emphasis added).  *See also*, *Alhassid v. Bank of Am., N.A.*, 688 F. App'x 753, 757 (11th Cir. 2017) ("the fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and

hourly rates"); *Willoughby v. Youth Vills., Inc.*, 219 F. Supp. 3d 1263, 1267 (N.D. Ga. 2016) (Jones, J.) (same).

In defiance of three-and-a-half decades of precedent, Defendant submits zero documentation to support the fees demanded in the Johnston Affidavit.   No time records.   No billing invoices.   No accounts receivable records to show what Silverton actually paid Defense counsel.   Nothing.   Not only does Defendant's failure to submit any evidence supporting the Fee Affidavit violate Supreme Court precedent, it disobeys this Court's Order requiring "Defendant to submit to the Court the attorneys' fees and costs of bringing this motion for sanctions."   [Doc. 124, p. 43].[1]

Defendant's failure to follow Supreme Court precedent and this Court's Order renders the task of evaluating the appropriateness of Defendant's fee

---

[1] Defendant also disobeys the Court's Order to submit fees "of bringing this motion for sanctions" by seeking to recover for other activities besides the Motion for Sanctions.  Specifically, Defendant also seeks to recover for time spent on Plaintiff's depositions.  [Doc. 126, ¶¶ 11-16].  This fee demand – a blatant attempt to pad Defendant's fee request and make it seem like a "compromise" if hours related to the deposition are cut from the fee demand – should be summarily rejected and ignored.  *See Anish v. Nat'l Sec. Corp.*, No. 10-80330-Civ, 2014 U.S. Dist. LEXIS 147621, at *6 (S.D. Fla. July 3, 2014) ("the Court agrees with Plaintiffs that the attorney's fee award should only involve time spent specifically completing activities directly related to Defendant's Amended Motion for Sanctions.  In fact, the exact wording of this Court's Order was that Plaintiff (sic.) should file an affidavit 'concerning its expenditure of reasonable attorney's fees and costs incurred in bringing the motion for sanctions.'").

3

demand impossible.  Without time, billing, and payment records, the Court cannot evaluate whether the time spent on any particular task is reasonable – except to evaluate at the broadest possible level whether 259.4 hours spent on a Motion for Sanctions is reasonable.   Nor is there any basis for evaluating whether the Affidavit's claim that Defense counsel were "very conservative" in allocating time spent to the Motion when there were "mixed" (block billing) time entries that included time that was not relevant to the Sanctions Motion.   [Doc. 126, ¶ 9].  Without documentation, the Court cannot even know how many time entries were mixed/block-billing entries, let alone how Defense counsel determined how much from each such entry to allocate to the Motion (a determination which is never explained in the Affidavit).

The complete absence of billing records also makes it impossible to determine whether Defense counsel actually billed Silverton for all the time asserted at the rates asserted.  Without Defense counsel's time records, the Court cannot tell whether attorney Natasha Moffitt's time (allegedly notated as "friends and family" time and not billed to Silverton, *Id.* at ¶ 7 n.1) was coded from the beginning as "non-billable" time with no expectation of collection.

Finally, and perhaps most importantly, without the time, billing, and payment records being submitted into evidence, the assertions in the Johnston

4

Affidavit as to time spent (except as to Mr. Johnston himself) and the fees incurred are inadmissible hearsay. Fed. R. Evid. 801(c), 802. Thus, there is no evidentiary basis <u>whatsoever</u> for awarding fees and the Fee Affidavit should be ignored.

**B. Other Glaring Omissions from Defendant's Submission re: Fees**

Even apart from the complete lack of supporting documentation, the Johnston Affidavit is flawed because of the things it does <u>not</u> say, omissions that would be crucial if the sanction amount were to be determined based on Defendant's attorney fees. For instance, the Affidavit never says that Defense counsel <u>actually</u> billed Silverton for the fee amounts demanded or that Silverton <u>actually</u> paid these amounts. It just says Silverton "incurred" over $200,000 in fees for 259.4 hours of time. [Doc. 126, ¶ 7]. However, in the same breath, the Affidavit admits that the vast majority of that time – allegedly 173.5 hours of Ms. Moffitt's time – was never actually billed to Silverton because Ms. Moffitt is married to Silverton's founder and President. *Id*. at ¶ 7, n.1. So, clearly, "incurred" does not mean "billed" or "paid." The Affidavit never states whether the remaining time was actually billed to or paid by Silverton. Without such information, it is nonsensical to base the sanction award on attorney fees. Defendant's fee demand is just a number thrown onto a sheet of paper with no apparent relation to the fees that Silverton actually paid.

Nor does the Affidavit state that Defense counsel actually <u>billed</u> Silverton at the claimed <u>hourly rates</u>.  It just says "[o]ur fees in connection with this matter <u>have been based on</u> our firm's standard hourly rates."  *Id*. at ¶ 6.  By stating the fees were "based on" the alleged "standard" rates rather than stating Defendant was actually "billed" at or paid those rates, the Affidavit leaves wiggle room for the possibility that the "standard" rates were discounted at the time of billing.  Given how far out of proportion the "standard" rates are to the rates charged by employment attorneys in the Atlanta market[2], such discounts seem likely.  Without any billing or payment records, it is impossible to know.

The Affidavit doesn't even attempt to support the "standard" hourly rates with any description of each timekeeper's education, skills, experience, reputation in the community, or expertise in employment law.[3]  Nor does it attempt to argue that these rates are reasonable based on the local market.[4]  Nor does it state that the time entries upon which it is allegedly based were made contemporaneously with the work performed, as opposed to being re-created days, weeks, or even months after the fact.  Thus, the Affidavit fails to meet Defendant's "burden of . . .

---

[2] More on this *infra*.

[3] In fact, Mr. Johnston doesn't even set forth the justification for his <u>own</u> rate in the Johnston Affidavit.

[4] Again, more on this *infra*.

documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Finally, in addition to the omissions <u>within</u> the Affidavit, it must be noted that only one attorney – Michael Johnston – submitted an affidavit. Defendant has <u>not</u> submitted affidavits by attorneys Natasha Moffitt, Andrew Walcoff, and Sedric Bailey. This absence is particularly concerning with respect to Ms. Moffitt, a partner who, according to the Johnston Affidavit, spent 173.5 hours of (unbilled) time on the Motion for Sanctions – approximately 67% of the time Defense counsel allege they spent on the Motion. [Doc. 126, ¶ 7]. In addition to the aforementioned lack of evidence supporting these attorneys' rates, the failure to submit affidavits from Ms. Moffitt, Mr. Walcoff, and Mr. Bailey means that nobody is attesting that the (unsubmitted) time entries for these individuals are accurate (or contemporaneous). Mr. Johnston cannot attest to the accuracy or timeliness of the time entries for other attorneys unless he spent all his time directly observing them working and recording time – a vanishingly unlikely scenario.

## C. Outrageously Excessive Hours Claimed in the Fee Affidavit

"Where the court finds that the fee requested by counsel is so 'grossly exaggerated or absurd', that the request for fees 'shocks the conscience of the

court', the court may entirely deny the request for fees." *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 264 F. Supp. 3d 618, 666 (M.D. Pa. 2017) (denying an exorbitant fee request altogether). This is one of those instances.

Defense counsel claim to have spent 259.4 hours on the Motion for Sanctions. [Doc. 126, ¶ 7]. According to the Affidavit, 173.5 of those hours were spent by Ms. Moffitt (a partner[5]) <u>alone</u>! *Id*. at ¶¶ 6-7.

This is an outrageously, suspiciously excessive amount of time to spend on a Motion for Sanctions and related Reply, as shown by the times approved – and disapproved – in the following cases: *Neville v. McCaghren*, No. CV 617-075, 2019 U.S. Dist. LEXIS 36915, at *1-3 (S.D. Ga. Mar. 7, 2019) (7.75 hours spent on a Motion for Sanctions approved); *Bussey-Morice v. Kennedy*, No. 6:11-cv-970-Orl-41GJK, 2018 U.S. Dist. LEXIS 145218, at *12-13 (M.D. Fla. Aug. 27, 2018) (approval for 49.1 hours spent on Motion for Sanctions <u>and</u> responding to a frivolous motion to vacate); *Mack v. Delta Air Lines, Inc.*, No. 1:13-CV-01162-

---

[5] Among other things, it is highly unusual to have a partner do most of the work (particularly "grunt work" like document review). This is especially the case when, according to the Affidavit, there were two other attorneys working on the case whose alleged rates were approximately 66% (Mr. Walcoff) and 56% (Mr. Bailey) of Ms. Moffitt's rate. [Doc. 126, ¶ 6]. Perhaps this distribution of labor was made because Ms. Moffitt's time was apparently not billed to Silverton because her spouse is Silverton's President. *Id*. at ¶ 7, n.1. But this only raises a related issue: Because Defendant was not actually billed for the vast majority of the time allegedly spent in the Motion for Sanctions, it should not reap a windfall by receiving payment for money it never spent.

SCJ-AJB, 2014 U.S. Dist. LEXIS 198762, at *44-46 (N.D. Ga. Aug. 11, 2014) (approval for 9.2 hours spent on Motions for Sanctions – reduced from 17.3 hours – and another 9.2 hours spent responding to frivolous motions to amend); *Anish v. Nat'l Sec. Corp.*, No. 10-80330-Civ, 2014 U.S. Dist. LEXIS 147621, at *5-10 (S.D. Fla. July 3, 2014) (finding 34.1 hours spent on a Motion for Sanctions "excessive and problematic" based on a review of the billing records and reducing fees by 75%); *Barnes v. Zaccari*, No. 7:12-cv-89 (HL), 2013 U.S. Dist. LEXIS 103197, at *83-85 (M.D. Ga. July 24, 2013) (approving 15.25 hours on a Motion for Sanctions), *rev'd on other grounds*, 592 F. App'x 859 (11th Cir. 2015); *City of Mt. Park, Ga. v. Lakeside at Ansley, LLC*, No. 1:05-CV-2775-CAP, 2011 U.S. Dist. LEXIS 162205, at *15-27 n.2 (N.D. Ga. July 21, 2011) (approving 41.9 hours spent on Motion for Sanctions, cancelling a deposition, and a teleconference with the Court).

In contrast, Defense counsel's claim of 259.4 hours spent on the Motion for Sanctions is over five (5) times greater than the largest amount approved in the above cases! This is frankly unbelievable. Even considering the Affidavit's claim that Defense counsel spent many hours "meticulously document[ing]" the issues Defendant was briefing [Doc. 126, ¶ 10], the claimed time is so large as to shock the conscience. This claim throws the credibility of the entire Affidavit into

question, especially given the utter absence of any supporting documentation.

If Defense counsel really did spend that much time on the Motion for Sanctions – and if Ms. Moffitt really did spend 173.5 hours on it[6] – then they spent a wildly excessive amount of time on it and should not be rewarded for such.  *See ACLU v. Barnes*, 168 F.3d 423, 426 (11th Cir. 1999) (awarding excessive hours is an abuse of discretion).  No client would have agreed to pay such a bill.

As with the other problems, the excessive hours claimed render the Affidavit an unreliable and inappropriate basis for determining the sanction amount.

### D. Outrageous Hourly Rates Far Exceeding Those For Employment Attorneys in the Atlanta Market

"A reasonable hourly rate is the prevailing market rate <u>in the relevant legal community</u> for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (emphasis added).  The "standard" hourly rates Defense counsel claims to charge its clients are vastly higher than those charged in the relevant legal community (Atlanta employment lawyers) for similar services by lawyers of reasonably comparable skills, experience, and reputation.  These inflated rates lead to an inflated fee demand which, again, proves the Johnston Fees

---

[6] Assuming Ms. Moffitt is required to bill 2,000 hours annually, this would amount to spending over 8% of her billable time on a *pro bono* case for her spouse – and that only on the Sanctions Motion.

Affidavit is an inappropriate basis for determining the sanctions amount in this case. *Barnes*, 168 F.3d at 426 (awarding non-local rates is an abuse of discretion).

Comparing the fees charged by Defendant's attorneys with those charged by Atlanta employment attorneys with similar experience[7] shows just how wildly excessive Defense counsel's rates are.

### a. Michael Johnston

Attorney Michael Johnston claims to charge clients a rate of $1,050 per hour!  [Doc. 126, ¶ 6].  Based on a review of his biography on King & Spalding's website[8] and records from the State Bar of Georgia[9], it appears he has been practicing law since 1989 – or, at the earliest, the early 1980s.

In contrast, employment law attorney A. Lee Parks has been practicing law since 1977.  [Parks Decl.[10] ¶ 1].  His accomplishments are myriad, including two victories before the U.S. Supreme Court and one before the Georgia Supreme Court.  *Id*. at ¶ 3.  As of 2015, Mr. Parks charged $475 per hour.  *Id*. at ¶ 4.  Even if Mr. Parks' rate has risen by, say, $50 per hour over the past four years, that rate

---

[7] Because Defendant has submitted no evidence to support its attorneys' hourly rates, Plaintiff and the Court are left to glean what information they can from Defense Counsels' firm biographical pages and publicly available State Bar of Georgia records.

[8] Filed herewith as **Exhibit A**.

[9] Filed herewith as **Exhibit B**.

[10] Filed herewith as **Exhibit C**.

would still be $525 per hour – <u>half</u> of what Mr. Johnston claims he charges.

### b. Natasha Moffitt

According to the Affidavit, attorney Natasha Moffitt charges her clients a "standard" rate of $910 per hour. [Doc. 126, ¶ 6]. Based on a review of her biography on King & Spalding's website[11] and records from the State Bar of Georgia[12], it appears she has been practicing law since 2001.

However, there is no evidence that Ms. Moffitt has any experience in the field of employment law. A PACER search [on this District's website] for Ms. Moffitt's name in connection with any conceivable case type code associated with employment law[13] yields precisely one result: this case. It appears she has not litigated any other employment law cases in this District. It is also important to note that, according to Ms. Moffitt's biography on King & Spalding's website, she does not typically practice employment law.[14] *See* Exhibit D. Given what appears

---

[11] Filed herewith as **Exhibit D**.

[12] Filed herewith as **Exhibit E**.

[13] More specifically, Plaintiff's counsel performed a series of PACER searches on April 19, 2019 using the following case type codes: 440, 442, 443, 445, 710, 720, 730, 740, 751, 790, 791. The Court may take judicial notice of this fact.

[14] Ms. Moffitt lists numerous practice areas on her firm bio: "Automotive, Transportation and Mobility", "Class Action Defense", "Commercial Litigation", "Financial Services", "Government Matters", "Intellectual Property Counseling", "Intellectual Property, Patent, Trademark and Copyright Litigation", and "Technology and Emerging Companies." "Labor and Employment Law" is not among her listed practice areas. *See* Exhibit D.

to be a complete lack of experience in the relevant practice area[15], the hourly rates she could expect to charge clients in this field should be commensurate with a beginning attorney in this area.

### c.  Sedric Bailey

According to the Affidavit, attorney Sedric Bailey, an associate, charges his clients a "standard" rate of $510 per hour.  [Doc. 126, ¶ 6].  Based on a review of his biography on King & Spalding's website[16] and records from the State Bar of Georgia[17], it appears he has been practicing law since 2013.

In contrast, employment law attorney – and Plaintiff's undersigned counsel in this case – Benjamin Stark has been practicing law since 2006.  *Pitts v. HP Pelzer Automotive Systems, Inc.*, No. 1:18-cv-00012-JRH-BKE, Declaration of Benjamin A. Stark in Support of Plaintiff's Evidence of Attorney's Fees[18] (Doc. 45-1), ¶¶ 4-6 (S.D. Ga. Mar. 18, 2019).  He has obtained summary judgment as to liability in three cases in this District (not to mention the partial summary judgment in this case).  *Id*. at ¶ 7.  Mr. Stark's hourly rate of $350 per hour has been

---

[15] If Ms. Moffit claims to have more employment law experience, it is remarkable that: (1) none of it is in the Northern District of Georgia, (2) she failed to identify any such experience in her firm bio, and (3) she failed to submit an affidavit attesting to such experience.  Plaintiff – and, more importantly, the Court – are left to piece together the best information they can find.

[16] Filed herewith as **Exhibit F**.

[17] Filed herewith as **Exhibit G**.

[18] Filed herewith as **Exhibit H**.

approved by District Judges Totenberg and Evans and Magistrate Judge Salinas, all of this District, most recently in May 2018. *Id.* at ¶ 8. Mr. Bailey thus claims to charge nearly 1.5 times Mr. Stark's rate despite having approximately 7 years less experience!

In sum, the rates allegedly charged by Defendant's counsel are radically higher than the prevailing local rate. This is yet another reason why the Johnston Affidavit is an inappropriate basis for assessing the sanction in this case.

### E. The Affidavit Contradicts Itself Regarding What Time Defense Counsel Attributes to the Sanctions Motion

In the Affidavit, Defense counsel claims to have been "very conservative in allocating to the Motion time spent pursuing the issues addressed in Silverton's Motion." [Doc. 126, ¶ 9]. However, in justifying this claim, the Affidavit makes things <u>less</u> clear! In one paragraph, it will claim certain time was counted, but then in another paragraph, it will say that time was not counted.

For instance, in paragraph 9, the Affidavit states that Defense counsel is not seeking to recover for "time that was written off." *Id.* Yet, two paragraphs earlier, it seeks to recover for 173.5 hours allegedly spent by Ms. Moffit that was never billed to Silverton. *Id.* at ¶ 7 & n.1.

Elsewhere, the Affidavit states that Defense counsel did not count "fees Silverton incurred in connection with the substantial amount of third party

discovery it conducted to uncover Plaintiff's lies prior to the filing of the Motion." *Id*. at ¶ 9.  But, in the previous paragraph, it says Defense counsel <u>did</u> count "an extensive review of the document productions of various third parties to identify the documents and information that demonstrate the falsity of Plaintiff's written and oral testimony."  *Id*. at ¶ 8.

Similarly, the Affidavit states that Defense counsel did not count "the extensive document review and additional research that was undertaken to uncover the lies."  *Id*. at ¶ 9.  But it also says they <u>did</u> count "researching case law relating to the issues raised in Silverton's Motion; an extensive review of Plaintiff's document production to identify the documents and information that demonstrate the falsity of Plaintiff's written and oral testimony; [and] an extensive review of the document productions of various third parties to identify the documents and information that demonstrate the falsity of Plaintiff's written and oral testimony." *Id*. at ¶ 8.

Especially given the complete absence of time records, billing invoices, and accounts receivable/payment records, this contradiction further renders the Affidavit useless as a means of determining the appropriate amount of sanctions.

## III.   THIS COURT HAS DISCRETION TO DETERMINE THE AMOUNT OF THE SANCTION BASED ON ABILITY TO PAY, RATHER THAN LODESTAR ANALYSIS

As the Eleventh Circuit has long held, a Court issuing sanctions must consider the sanctioned party's ability to pay in order to fashion a sanction that is effective as a deterrent:

> We conclude that, when exercising its discretion to sanction under its inherent power, a court must take into consideration the financial circumstances of the party being sanctioned. . . The inherent power to impose sanctions allows courts to vindicate their judicial authority, but such power must be used to fashion "an appropriate sanction."

> Sanction orders must not involve amounts that are so large that they seem to fly in the face of common sense, given the financial circumstances of the party being sanctioned.  What cannot be done must not be ordered to be done. . . And, sanctions must never be hollow gestures; their bite must be real.  For the bite to be real, it has to be a sum that the person might actually pay.  A sanction which a party clearly cannot pay does not vindicate the court's authority because it neither punishes nor deters.

*Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002) (internal citations omitted).

This Court has the authority to fashion whatever sanction it believes will accomplish its deterrent purpose and vindicate the Court's authority.  While it is required to consider ability to pay, it is <u>not</u> required to base the sanction on Defendant's asserted fees.  Many courts across the country have fashioned

effective sanctions based on the sanctioned party's ability to pay rather than the

other party's attorney fees:

- In *Springs v. Gielow*, No. 3:14cv105/MCR/EMT, 2016 U.S. Dist. LEXIS 144318, at *1-2 (N.D. Fla. Oct. 18, 2016), the Court determined that a sanction of $1,000 would be effective based on ability to pay, deriving that number from comparison to other sanctions issued against *in forma pauperis* plaintiffs.[19]

- In *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, No. 07-CV-3208 (KAM)(SMG), 2010 U.S. Dist. LEXIS 104879, at *3-4 (E.D.N.Y. Sep. 30, 2010), the Magistrate recommended a sanction based on attorney fees of $105,037.02. But the District Judge reduced the sanction to $10,000 based on the plaintiff's limited ability to pay, rejecting the defendant's argument that such reduction would result in defendant not being fully compensated for plaintiff's frivolous actions because the purpose of sanctions is not compensation but deterrence.[20] *Id*. at *6-8. When the plaintiff attempted to further reduce the sanctions based on lodestar analysis, the Court rejected the argument as moot, further indicating that the penalty was no longer based on lodestar analysis. *Id*. at *14-15. The Circuit Court affirmed this holding. *Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 179 (2d Cir. 2012).

- In *Talley v. City of Atl. City*, Civil Action No. 04-1146 (JBS), 2007 U.S. Dist. LEXIS 65774, at *4-7 (D.N.J. Sep. 6, 2007), the Court first considered lodestar analysis, but then ultimately reduced the sanction by 75% based solely on ability to pay.

---

[19] While the Magistrate Judge started with the lodestar amount and reduced the sanction based on ability to pay – *Springs v. Gielow*, No. 3:14cv105/MCR/EMT, 2016 U.S. Dist. LEXIS 144318, at *1-2 (N.D. Fla. Oct. 18, 2016) – the District Judge made no reference to lodestar analysis. No. 3:14cv105/MCR/EMT, 2016 U.S. Dist. LEXIS 144318, at *1-2 (N.D. Fla. Oct. 18, 2016).
[20] *Cf. Martin*, 307 F.3d at 1337 (purpose of sanctions is to "vindicate judicial authority" and rejecting sanction that "neither punishes nor deters").

17

- Finally, in *Coats v. Pierre*, 890 F.2d 728, 733-34 (5th Cir. 1989), the Fifth Circuit rejected the District Court's award of a $20,000 sanction based on attorney fees and instead awarded a $1,800 sanction based on "the conduct involved and Dr. Coats's economic circumstances."

Just as in those cases, the Court here should ignore Defendant's fatally flawed Fees Affidavit and award the sanction in an amount that will achieve the desired deterrent effect based on Plaintiff's ability to pay. As Plaintiff argued back in her Response to the Motions for Sanctions:

> Here, Ms. Watts's ability to pay is extremely limited. She is unemployed – except for the occasional odd job – and living off student loans. (Watts Sanctions Decl. ¶¶ 2-4, 12). The average balance in her bank account for the past 6 months (February-July 2018) was $839.25. *Id.* at ¶ 10. She only has approximately $5,000 equity in her $170,000 home and is past due on her car payments. *Id.* at ¶¶ 6-7. She is a single parent raising two teenage boys, one of whom is about to go to college at significant expense. *Id.* at ¶¶ 5, 9. In sum, she cannot pay sanctions of any significant size.

[Doc. 94, p. 26]. Even with the Court ordering that any such sanctions be taken from Plaintiff's recovery in this case, she still would be limited by the amount of such award. *Id*. at p. 27 ("by her most recent estimate, Ms. Watts is seeking approximately $18,980.48 in back wages").

Based on the above evidence, a sanction of approximately $5,000 would achieve the desired deterrent effect.

## IV.   CONCLUSION

The contradictions, lack of evidentiary support, omissions, and outrageous claims as to fees and hours render the Johnston Fees Affidavit an unreliable and inappropriate basis for assessing the amount of sanctions in this case.  Instead, sanctions should be assessed based on Plaintiff's extremely limited ability to pay. Given her limited financial means, Plaintiff respectfully submits that a sanction of $5,000 would have sufficient "bite" to deter any future misconduct without ordering "that which cannot be done" and without rendering the protections of the FLSA a nullity.

This 22nd day of April 2019.

s/Benjamin A. Stark
Benjamin A. Stark, Esq.
Georgia Bar No. 601867

BARRETT & FARAHANY
1100 Peachtree Street NE, Ste. 500
Atlanta, GA 30309
(404) 214-0120
BStark@JusticeAtWork.com

19

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to Local Rule 7.1D of the Northern District of Georgia, that the foregoing ***Plaintiff Elaine Watts' Response to Defendant's Fee Affidavit re: Sanctions*** was prepared in 14-point Times New Roman font.

This 22nd day of April 2019.

<u>s/Benjamin A. Stark</u>
Benjamin A. Stark, Esq.
Georgia Bar No. 601867

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ELAINE WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 1:17-cv-03574-SCJ |
| v. | ) | |
| | ) | |
| SILVERTON MORTGAGE | ) | JURY TRIAL DEMANDED |
| SPECIALISTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed Plaintiff Elaine Watts's Response to Defendant's Fee Affidavit re: Sanctions with the Clerk of Court using the Court's Pacer electronic filing system which will automatically send email notification of such filing to all attorneys of record.

This 22nd day of April 2019.

<u>s/Benjamin A. Stark</u>
Benjamin A. Stark, Esq.
Georgia Bar No. 601867