IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ELAINE WATTS, | ) | |
| | ) | |
|    Plaintiff, | ) | Civil Action No. |
| | ) | 1:17-cv-03574-SCJ |
| v. | ) | |
| | ) | |
| SILVERTON MORTGAGE | ) | JURY TRIAL DEMANDED |
| SPECIALISTS, INC., | ) | |
| | ) | |
|    Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF ELAINE WATTS'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES & EXPENSES

### I.   INTRODUCTION AND FACTUAL BACKGROUND

Over two years ago, on September 6, 2017, Plaintiff Elaine Watts ("Plaintiff" or "Watts") retained the law firm of Barrett & Farahany (hereinafter "B&F") to represent her to prosecute alleged violations of the FLSA by her former employer, Defendant Silverton Mortgage Specialists, Inc. ("Defendant" or "Silverton"). As a condition to agreeing to represent Plaintiff, B&F entered into a contract for services with Watts. Subject to the fee agreement, if Plaintiff did not receive a recovery, Plaintiff's counsel would not receive any fee.[1]

---

[1] Exhibit 1 – Decl. of V. Severin Roberts ("Roberts Decl."), ¶¶ 7-8.

On September 15, 2017, Watts's counsel filed suit on her behalf, thereby assuming the risk of litigation, including the real possibility that Plaintiff's action would not result in a fee. [Doc. 1]. Now, after more than two years of litigation, including eight depositions, substantial written discovery, extremely thorough summary judgment briefing, and mediation that resulted in a successful settlement in which Plaintiff procured the vast majority of her claimed unpaid overtime wages, Watts moves this Court for her attorneys' fees and expenses.

<u>History of Settlement Negotiations</u>[2]

On October 3, 2017, at the outset of this action and prior to receiving records that would have assisted Plaintiff in providing an estimate of her unpaid overtime, Plaintiff provided a settlement demand of $65,000, reflecting an estimated $31,650.96 in unpaid overtime[3], plus liquidated damages, along with attorneys' fees and expenses. Without the benefit of any records, Plaintiff estimated that she worked 19 unpaid overtime hours in 33 workweeks. On November 20, 2017, Defendant made an offer of $2,500, to which Plaintiff responded with a bracket of $30,000 -

---

[2] Plaintiff does not seek to introduce the Parties' settlement discussions for purposes of proving or disproving the validity or amount of a disputed claim. Rather, Plaintiff includes such communications to illustrate the factual circumstances that required Plaintiff to litigate this case for over 2 years through summary judgment and mediation, incurring substantial fees in the process.

[3] With the use of records provided by Defendant halfway through the first discovery period in this action, Plaintiff refined her unpaid overtime and liquidated damages calculation and contended that she was owed $18,980.48 in unpaid overtime and an equal amount in liquidated damages. *See* [Doc. 119-40, Interrogatory Responses No. 6, 13].

$40,000 meaning Plaintiff offered to move to $40,000 if Defendant came up to $30,000.[4]

The parties proceeded with the discovery process. On January 15, 2018, Defendant offered $7,500 to resolve Plaintiff's action, inclusive of fees and expenses and noted that Defendant would not make another move unless Plaintiff's next demand came below $25,000.   On January 16, 2018, Defendant responded to Plaintiff's discovery requests and stated it would produce documents once the Parties entered into a protective order.[5]

In mid-February 2018, Plaintiff finally received some documents from Defendant, including some of the records needed to provide a more precise accounting of her unpaid hours. On February 21, 2018, Defendant made an offer of $10,500 (inclusive of fees and expenses). On February 22, 2018, Plaintiff countered with a demand of $37,000 (inclusive of fees and expenses which exceeded $14,900 at the time) with the goal of continuing negotiations towards a resolution.  However, at this point, negotiations reached an impasse and the Parties proceeded with depositions and summary judgment.[6]

---

[4] Roberts Decl. ¶¶ 11-12.
[5] Roberts Decl. ¶¶ 13-14.
[6] Roberts Decl. ¶¶ 15-19.  Please note, Plaintiff's Counsel has had to comb through emails over lengthy time period to determine the history of settlement negotiations. The recitation provided here is accurate to the best of Counsel's knowledge.

<u>Events Necessitating Major Investment of Time by Plaintiff's Counsel</u>

During the litigation, several events required a larger-than-usual investment of time by Plaintiff's Counsel.

<u>First</u>, as noted *supra* and earlier in this litigation [Doc. 94, pp. 5-6; Doc. 124, pp. 2-4, 12], Plaintiff's initial estimates of her overtime were made based on her memory of a typical workweek, without the benefit of records that were in Defendant's possession.   However, after receipt of Silverton's time, parking, computer activity, and email records, Plaintiff revised her estimated overtime downward based on information from these records.  *Id*.  Plaintiff's Counsel spent approximately <u>28.55 hours</u> reviewing the records provided by Defendant, calculating Plaintiff's overtime based on those records, and amending her discovery responses to provide this newly calculated/revised estimate.[7]

<u>Second</u>, in late March and early April 2018, after Plaintiff's deposition, Defendant repeatedly demanded "supplementation" of Plaintiff's discovery responses.  Plaintiff's Counsel attempted to respond in good faith to these demands, spending dozens of hours scouring Plaintiff's Gmail account, Mercer class records, Uber account, etc. to provide Defendant with the requested information.  However, Defendant's Counsel responded to each new production by labeling it "deficient"

---

[7] <u>Exhibit 2</u> – Decl. of Benjamin Stark ("Stark Decl.") ¶ 17, Ex. A.

and adding new demands.  After 2 or 3 supplementations, the Court finally had to get involved and hold a Conference to clarify the scope of what Plaintiff was required to produce.   [Doc. 50].   After this, Plaintiff produced one more supplementation in compliance with the Court's instructions.  In sum, Plaintiff's Counsel spent approximately 90.95 hours responding to Defendant's repeated "supplementation" requests and participating in the Court conference. [8]

Third, Defendant's Summary Judgment Motion was, to put it mildly, extremely thorough and required an equally thorough response by Plaintiff and her Counsel.  For instance, Defendant sought to challenge Plaintiff's estimate of her hours worked (which was based on Defendant's computer activity records) by arguing Watts engaged in personal business during "gaps" in the computer activity. [Doc. 61, pp. 8-10, 23-24].  This required Plaintiff's Counsel to extensively comb through Plaintiff's work emails to show that she did, in fact, send work-related emails (engage in work) during the so-called "gaps."  [Doc. 84-3, ¶¶ 111-119]. Plaintiff's Counsel also used her work emails and computer records to show that even a conservative estimate of her hours from those records demonstrated that she worked overtime.  [Doc. 84-3, ¶¶ 120-128; Doc. 93, pp. 26-27].  Finally, Defendant argued that Silverton lacked any knowledge of Plaintiff's "off-the-clock" work, so

---

[8] Stark Decl. ¶ 18, Ex. B.

Plaintiff's Counsel had to comb through Plaintiff's work emails to show the 221 work-related emails she sent to her supervisor after hours.  [Doc. 84-3, ¶¶ 38-75; Doc. 93, pp. 8-9].  In sum, Plaintiff's Counsel spent approximately <u>51.95</u> hours compiling the above information and determining how to present it to the Court in a clear manner.[9]

<u>Summary Judgment, Settlement</u>

On March 21, 2019, at the conclusion of the summary judgment phase, this Court issued an Order GRANTING Plaintiff's Motion for Partial Summary Judgment (dismissing the Administrative Exemption defense) and DENYING Defendant's Motion for Summary Judgment.  [Doc. 123].  On April 19, 2019 – at the request of the Parties – this Court stayed this matter and referred it for mediation before a Magistrate Judge.  [Doc. 132].

A mediation was held by Magistrate Judge Catherine M. Salinas on July 25, 2019.  [Doc. 136].  At this mediation, the Parties reached a settlement as to the payments to be made to Plaintiff.  [Doc. 139].  However, the issue of Plaintiff's attorneys' fees and expenses was not resolved.  *Id.*

Ultimately, the settlement resulted in Defendant agreeing to pay Plaintiff $16,000 ($6,000 in the form of a direct payment, less applicable wage withholdings,

---

[9] Stark Decl. ¶ 19, Ex. C.

and $10,000 in the form of Defendant waiving a Court-imposed monetary sanction) out of the $18,980.48 of unpaid overtime wages Plaintiff claimed she was owed. [Doc. 144, p. 7].  On October 31, 2019, this Court approved the settlement.  [Doc. 145].  In its Order approving the settlement, the Court incorporated the terms of the Settlement Agreement into its Order and retained jurisdiction to enforce the settlement.  *Id*.  The Court further determined that Plaintiff is a "prevailing party" and is entitled to an award of attorneys' fees and expenses under the FLSA.  *Id*.

Plaintiff now requests full recovery of her attorneys' fees in the amount of $160,983.25. Plaintiff also seeks recovery of expenses in the amount of $8,942.36. As set forth in detail below, this figure is based on Counsel's reasonably accrued time in the case through November 21, 2019.  Watts is also entitled to recover fees incurred in submitting this petition and any related briefing.  Watts will submit supplemental fee petitions as may be needed to ensure her Counsel are fully compensated for their representation.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    WATTS IS ENTITLED TO ATTORNEYS' FEES PURSUANT TO 29 U.S.C. § 216(B)

This motion for attorneys' fees is based on Plaintiff's status as the prevailing party in this action for overtime pay brought pursuant to the FLSA. Pursuant to the FLSA, the court in a private FLSA action "shall, in addition to any judgment

awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of litigation." 29 U.S.C. § 216(b). Fee awards are mandatory for prevailing plaintiffs in FLSA cases. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).

Without a fee shifting provision, employees would have no motivation to bring, and attorneys would have absolutely no economic incentive to take, low-damage-plaintiff FLSA claims. The result would be that employers could egregiously flout federal overtime law with impunity. For this reason, the Eleventh Circuit has held that "attorneys' fees are an integral part of the merits of FLSA cases and part of the relief sought therein." *Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987).

This Court faces four primary issues in making an award of attorneys' fees and costs. First, has the party won enough relief to be characterized as a prevailing party? Second, has the party documented the proper amount of hours and hourly rate by submitting evidence supporting the hours worked and the rates claimed? Third, has the opposing party demonstrated grounds for questioning the hours or rate? Fourth, is an upward or downward adjustment appropriate? See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

1.    **PLAINTIFF IS THE PREVAILING PARTY ENTITLED TO AN AWARD OF ATTORNEYS' FEES.**

This issue has already been resolved by this Court, which determined Plaintiff was a "prevailing party" under the FLSA. [Doc. 145]. Plaintiff will nevertheless briefly address why the Court is correct.

Prevailing on "any significant issue in the litigation which achieved some of the benefit that the part[y] sought in bringing suit" compels characterization of that party as the prevailing party. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989). "The fact that [a plaintiff] prevailed through a settlement rather than through litigation does not weaken her claim to fees." *McBride v. Legacy Components, LLC*, No. 18-14105, 2019 U.S. App. LEXIS 18512, at *3 (11th Cir. June 20, 2019) (quoting *Maher v. Gagne*, 448 U.S. 122, 129 (1980)). "The key question in determining prevailing party status is whether the party 'has succeeded on any significant claim affording it some of the relief sought. . . . [T]he plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.'" *McBride*, 2019 U.S. App. LEXIS 18512 at *3-4 (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 791-92).

Such a change in the legal relationship occurs when the Court approves the terms of the settlement. *See Wolff v. Royal Am. Mgmt.*, 545 F. App'x 791, 795 (11th Cir. 2013); *Am. Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1321 (11th Cir. 2002).

Thus, this Court's approval of the settlement would have made Plaintiff the prevailing party even if the Court did not explicitly say so, which it did.  [Doc. 145].

This is particularly so when the Court either "incorporates the terms of a settlement into its final order" or "expressly retains jurisdiction to enforce a settlement."  *Chmielarz*, 289 F.3d at 1320.  Here, the Court has done both.  [Doc. 145].

As the prevailing party on her FLSA overtime claim against Silverton, Watts is entitled to an award of reasonable attorneys' fees and expenses pursuant to 29 U.S.C. § 216(b).

### 2. CALCULATION OF WATTS'S ATTORNEY'S FEES

### a. The "Lodestar" calculation

In determining an objective estimate of the value of a lawyer's services, this Court must multiply those hours reasonably expended by a reasonable hourly rate, a process known as computing the "lodestar." *Hensley v. Eckerhart,* 461 U.S. at 433-34; *Bivins v. Wrap It Up, Inc.*, 380 F. App'x 888, 890 (11th Cir. 2010).

There is a "strong presumption that the lodestar reflects a reasonable sum the attorneys deserve."  *Bivins*, 380 F. App'x at 891 (internal quotations omitted); *Webster v. Fulton Cty.*, 112 F. Supp. 2d 1339, 1349 (N.D. Ga. 2000).

Once the lodestar has been established, the court can then determine whether any adjustments to the lodestar are appropriate. *Hensley*, 461 U.S. at 434; *Jan R. Smith Construction Co. v. DeKalb County*, 18 F.Supp.2d 1365, 1374 (N.D. Ga. 1998). While the "lodestar" method effectively replaced the balancing test previously prescribed by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), the twelve Johnson factors "might still be considered in terms of their influence on the lodestar amount." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1340 (11th Cir. 1999) ("The [district] court properly considered the reasonable attorney fee guidelines the former Fifth Circuit outlined in *Johnson*. . .which we have subsequently adopted for reasonable fee determinations for prevailing parties").

The factors guiding the determination of a fee award enumerated in *Johnson* include: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the necessary skill of the attorney; (4) the preclusion of other employment by the attorney due to the case; (5); the customary fee; (6) whether the attorney charges a fee on a fixed or contingent basis; (7) the time limitations imposed by the client or other circumstances; (8) the financial amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney;

(10) the undesirability of the case; (11) the nature and length of the attorney's professional relationship with the client; and (12) awards in like cases. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 n.2 (11th Cir. 2008).

As detailed below, Plaintiff's requested attorney's fees are based on her attorneys' reasonably incurred time in the case at their respective reasonable hourly rates.

### i.   WATTS REQUESTS RECOVERY OF TIME REASONABLY SPENT BY HER COUNSEL IN REPRESENTING HER

The hours claimed or spent on a case are "[t]he most useful starting point for determining the amount of a reasonable fee." *Hensley,* 461 U.S. at 433. Counsel must exercise "billing judgment" in determining the hours reasonably expended on the merits (*Id.* at 437), and attorneys should also be compensated for the time reasonably expended in seeking an award of fees from the court. *Johnson v. Univ. Coll. of Univ. of Ala.*, 706 F.2d 1205, 1207 (11th Cir. 1983); *Yule v. Jones*, 766 F. Supp. 2d 1333, 1341-42 (N.D. Ga. 2010).

Counsel's certification that the work itemized has in fact been performed is entitled to "considerable weight on the issue of time required." *Perkins v. Mobile Hous. Bd.,* 847 F.2d 735, 738 (11th Cir. 1988). Indeed, the Eleventh Circuit has stated that, because of the considerable weight given such evidence "it must appear

that the time claimed is obviously and convincingly excessive[10] under the circumstances" for the Court to reduce the number of hours awarded. *Id.*

In making a fee request, "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434; *Norman,* 836 F.2d at 1301. Counsel should provide in the fee request the hours spent "with sufficient particularity." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999).

This Court has determined that "compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading in complex cases, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing the favorable judgment, and even preparing and litigating the request for attorney's fees[11]." *Weissinger v. Murray*, No. 1:06-CV-1544-TWT, 2009 U.S. Dist. LEXIS 56789, at *16 (N.D. Ga. July 2, 2009).

---

[10] For instance, in contrast to Plaintiff's Counsel's assertion that they spent 586.98 hours on the entire case (excluding sanctions briefing), Defendant's Counsel has claimed they spent 259.4 hours only on sanctions briefing and 160.2 hours only on Plaintiff's depositions. [Doc. 126, pp. 4, 7]. Defendant's Counsel's claimed hours on just those two tasks amounted to over 70% of the hours Plaintiff's Counsel are claiming for the entire case. This Court rightly found Defendant's Counsel's claimed hours "excessive and unreasonable." [Doc. 134]. In contrast, Plaintiff's Counsel seeks no such excessive fees.

[11] As noted *supra*, Plaintiff will submit supplemental fee petitions as necessary to recover for time spent litigating this fee petition.

Watts's attorneys and support staff have maintained detailed, accurate and contemporaneous records of time spent working in this matter, which are attached hereto as "Exhibit 3".[12] Plaintiff's attorneys further submit that they did not perform any redundant, excessive, or otherwise unnecessary work in the representation and that all of the work performed was reasonably necessary to properly represent Plaintiff.[13]

The litigation of this action – which included eight depositions, substantial written discovery, extremely thorough summary judgment briefing, and mediation – required the devotion of substantial and time and resources by Watts's attorneys and support staff.

"A well-prepared fee petition . . . would include a summary, grouping the time entries by the nature of the activity or the stage of the case." *Barnes*, 168 F.3d at 427.  As detailed in Counsel's billing records, Watts's attorneys and paralegals performed the following amount of hours of work in the various stages of the litigation of this action:

| Category | Hours | Fees | Cumulative Fees |
|---|---|---|---|
| 1. Prelitigation and Litigation Pleading | 7.45 | $1,550.00 | $1,550.00 |

---

[12] Stark Decl. ¶ 13 (certifying that the time records are accurate and the work itemized was, in fact, performed).
[13] Roberts Decl. ¶ 1; Stark Decl. ¶ 13.

| | | | |
|---|---|---|---|
| **(9/8/17 – 10/26/17)** | | | |
| 2. Pre-service, Joint Preliminary Planning Period and Early Discovery (through DEF's production of computer records)<br><br>**(10/27/17 – 2/12/18)** | 34.7 | $7,398.75 | $8,948.75 |
| 3.     Mid-Discovery Phase     (post-production of DEF's computer records and pre-PLT's      1st deposition,  including time spent recreating PLT's  hours  using DEF's records)<br><br>**(2/13/18 – 3/14/18)** | 96.25 | $28,667.50 | $37,616.25 |
| 4.  Late  Discovery Phase    (PLT's   1st deposition     through close   of   discovery, including   discovery disputes   &   DEF's repeated demands for further  supplemental discovery)<br><br>**(3/15/18 – 5/5/18)** | 146.43 | $33,618.25 | $71,234.50 |

| | | | |
|---|---|---|---|
| 5. Post-Discovery through Submission of All Summary Judgment Pleadings<br><br>(**5/6/18 – 8/29/18**) | 190.5 | $55,318.75 | $126,553.25 |
| 6. Awaiting Order on Summary Judgment (through filing of SJ Order, including various motions re: filing under seal)<br><br>(**8/30/18 – 3/21/19**) | 18.85 | $3,841.25 | $130,394.50 |
| 7. Post-MSJ Order through Resolution (including mediation, finalizing settlement, and obtaining Court approval of settlement)<br><br>(**3/22/19 – 11/21/19**) | 92.8 | $30,588.75 | $160,983.25 |
| **Total** | **586.98** | **$160,983.25** | |

Further, as detailed in Sec. I, *supra*, Plaintiff's Counsel had to invest significant time in this case for several reasons.  First, in phase 3 of the litigation, Plaintiff's Counsel had to expend approximately <u>28.55 hours</u> recreating Plaintiff's

hours based on Defendant's time, parking, computer activity, and email records after Defendant produced those records.[14]

Second, in phase 4 of the litigation, Plaintiff's Counsel had to spend approximately 90.95 hours responding to Defendant's repeated "supplementation" discovery demands – including detailed review of Plaintiff's personal email account – and participating in the Court conference. [15]   Notably, this constituted over 62% of Counsel's time in that phase of the litigation, even as Counsel also conducted other discovery activities and defended Plaintiff's 2nd deposition. [16]

Third, in phase 5 of the litigation (the summary judgment phase), Plaintiff's Counsel had to expend approximately 51.95 hours reviewing and compiling email records in order to respond to Defendant's extremely thorough summary judgment arguments.[17]   Notably, this constituted over 27% of Counsel's time during the summary judgment phase, even though Counsel also spent time preparing Plaintiff's own Summary Judgment Motion and a Reply in support thereof, not to mention other tasks associated with Plaintiff's Response to Defendant's Summary Judgment Motion. [18]

---

[14] Stark Decl. ¶ 17, Ex. A.
[15] Stark Decl. ¶ 18, Ex. B.
[16] Stark Decl. ¶ 18, Ex. B; Exhibit 3.
[17] Stark Decl. ¶ 19, Ex. C.
[18] Stark Decl. ¶ 9, Ex. C; Exhibit 3.

Fourth, Defendant consistently failed to engage in meaningful settlement discussions until after this Court granted Plaintiff's – and denied Defendant's – Summary Judgment Motion.   At no point did Defendant's offers (which were always inclusive of attorneys' fees) come close to the amount of "Plaintiff's ultimate recovery plus attorney fees incurred to date".[19]   Because of this failure to meaningfully negotiate, it was necessary to litigate this matter through summary judgment and finally resolve it via mediation and this Motion.

All of the time incurred by Watts's attorneys was reasonably incurred and should be awarded. Many of the *Johnson* factors also support the requested award:

### *The Time and Labor Required*:

The time and labor required in order to prosecute this action was substantial, but not excessive. In light of the result achieved and the time and labor resources required to properly prosecute this case through summary judgment and mediation, the total sum of attorneys' fees is reasonable.   Counsel for Plaintiff, in the exercise of billing judgment, have excluded time entries related to responding to Defendant's Motion for Sanctions (including responding to the Affidavit of Michael Johnston regarding attorney fees/the amount of the sanction).   This is because, in Counsel's judgment, time spent on sanctions briefing was not part of

---

[19] Roberts Decl. ¶¶ 11-19.

the work required to achieve the successful outcome and recovery for Plaintiff. [20]
The total time spent by each attorney and paralegal in this matter is well
documented on the attached time sheets (Exhibit 3). Where possible, a lower-
billing attorney or paralegal was used to perform tasks at a lower hourly rate than
the lead counsel. The time and labor required is reasonable under the
circumstances.

### *The Novelty and Difficulty of the Questions*:

Employment cases, and FLSA cases in particular, consistently present both
novel and difficult legal questions. In this hard fought-case, Counsel for Plaintiff
successfully obtained summary judgment on the Administrative Exemption
defense (which could have entirely excluded Plaintiff's claim) and litigated this
action through a successful settlement, approved by the Court, obtaining for Watts
approximately 84% of her claimed unpaid overtime wages under the FLSA.

### *The Skill Requisite to Perform the Legal Service Properly*:

In the instant case, two skilled attorneys presented a factually complicated
case with many moving parts to the Court in a form that made it relatively easy to
understand. Moreover, Plaintiff's Counsel's expertise was called upon throughout
the litigation to obtain clear evidence and prepare a foundation to prevail at

---

[20] Stark Decl. ¶ 14; Roberts Decl. ¶ 20.

summary judgment and, had it proved necessary, at trial. Further, Counsel's skill and experience was called upon to address thorny issues involving sanctions for Plaintiff's conduct during a deposition without allowing such issues to derail the litigation and prevent Plaintiff from obtaining any recovery.

**The Customary Fee:**

As set forth in more detail *infra* in the section on Plaintiff's Counsel's hourly rates, the rates charged by attorneys V. Severin Roberts and Benjamin Stark are in keeping with rates that have been charged by and awarded to other employment counsel in the metropolitan Atlanta area and/or that have been awarded to Counsel by this Court.  Thus, the rates sought by Plaintiff's Counsel meet the "customary" standard.

**Whether the Fee is Fixed or Contingent:**

In the instant case, the fee arrangement was contingent, because the amount of time required by the case was so great as to exceed the resources of Plaintiff. Both Plaintiff and her Counsel took a significant risk in pursuing what proved to be a meritorious cause against Silverton.

**Time Limitations Imposed by the Client or the Circumstances:**

The time limitations imposed in this case came primarily from the litigious nature each step of this case required.   Whether responding to repeated

"supplementation" discovery demands or reviewing detailed email records to respond to Defendant's thorough Summary Judgment Motion, Plaintiff's attorneys were frequently required to focus a very substantial portion of their time and practice resources to litigating this case.

### *The Amount Involved and the Results Obtained*:

The Court-approved settlement in this case reflects that Plaintiff achieved very successful results on her claim as she was only seeking approximately $18,980.48 in unpaid overtime wages.  After summary judgment and mediation, Plaintiff obtained $16,000.00 in damages via settlement.  [Doc. 144, p. 7].  The results obtained were significant given the small and finite amount of damages sought (i.e. the results obtained are clearly distinguishable from, for example, a Title VII action in which a Plaintiff seeks and could potentially recover $1,000,000 in damages and obtains a verdict for $15,000).[21]

### *The Experience, Reputation, and Ability of the Attorneys*

The experience, reputation and ability of Plaintiff's attorneys are set forth in their attached declarations.[22] The declarations of Brett Bartlett and Robert M.

---

[21] Plaintiff will further address the results obtained *infra* in the section on adjustments to the lodestar.

[22] Roberts Decl. ¶¶ 3-6; Stark Decl. ¶¶ 2-9.

Lewis also support the contentions of counsel for Plaintiff with regard to their experience and reputation.

For instance, lead counsel V. Severin Roberts has litigated over 180 FLSA cases in this district, achieving numerous victories at summary judgment and before the 11th Circuit, obtaining multiple FLSA collective action certifications and achieving frequent substantial settlements.[23]   Brett Bartlett, a defense-side employment law attorney with decades of experience[24], describes Mr. Roberts as one of "the top FLSA litigators representing plaintiffs in Georgia."   Mr. Bartlett asserts that Mr. Robert understands the law and "the often varying precedent" and is a "savvy strategist[]."   Based on his experience litigating against Mr. Roberts, Mr. Bartlett attests that Mr. Roberts "represents [his] clients' interests extremely well" and is able to do so "because of Mr. Roberts's innovative ways of thinking about these [FLSA] cases."[25]

Similarly, co-counsel Benjamin Stark has over 13 years of experience in employment law litigation, and has successfully _moved_ for partial summary judgment on plaintiffs' behalf (a rare accomplishment) in four cases, including this

---

[23] Roberts Decl. ¶¶ 4-5.
[24] Exhibit 4 – Decl. of Brett Bartlett ("Bartlett Decl.") ¶¶ 3-7.
[25] Bartlett Decl. ¶ 8.

one. [26]  Robert M. Lewis, Regional Counsel for ERISA for the U.S. Department of Labor and an employment attorney with decades of experience[27], worked alongside and then supervised Mr. Stark for five and a half years at the Department of Labor.[28]  In that time, Mr. Lewis states that he was "impressed by Mr. Stark's extraordinary competence", noting that Mr. Stark received the Secretary of Labor's Exceptional Achievement Award.  When supervising Mr. Stark, Mr. Lewis "was always confident that [Mr. Stark] would approach every issue with thorough research, sharp legal reasoning and clear legal writing."  Mr. Lewis further praises Mr. Stark's "intellectual abilities, litigation savvy, and admirable work ethic."[29]

### *The Undesirability of the Case*

As courts have recognized, civil rights cases are undesirable and thus warrant payment of a higher fee in order to attract competent counsel. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974)[30]. Civil rights cases are viewed as undesirable by most members of the Bar. *See, e.g.*, *Searcey v. Crim*, 692 F. Supp. 1363, 1366 (N.D. Ga. 1988) ("Although there are a great many lawyers in the Atlanta area, the Court is aware that it is difficult to find any

---

[26] Stark Decl. ¶¶ 4-9.
[27] Exhibit 5 – Decl. of Robert M. Lewis ("Lewis Decl.") ¶¶ 4-7.
[28] Lewis Decl. ¶¶ 3, 8.
[29] Lewis Decl. ¶ 8.
[30] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

attorney who has the time, experience and financial cushion necessary to accept Section 1983 cases on a contingency basis"). Civil rights litigation generally is seen "as very undesirable because it stigmatizes an attorney as a 'civil rights lawyer' and thus tends to deter fee-paying clients, particularly high-paying commercial clients, from seeking assistance from that lawyer." *Stokes v. Montgomery*, 706 F. Supp. 811, 815 (M.D. Ala. 1988), aff'd, 891 F.2d 905 (11th Cir. 1989).

The undesirability of this case weighs in favor of a full award of fees.

### *The Nature and Length of the Professional Relationship with the Client*

B&F's professional relationship with Watts extended from 2017 through the present, with all work done on a contingent fee basis. There is very little chance for repeat business from the client.[31] Plaintiff's Counsel has now pursued the case for over two years without recovery of any fees.[32]

### ii.   THE HOURLY RATES CHARGED ARE WELL WITHIN THE RANGE OF PREVAILING MARKET RATES IN THIS COMMUNITY FOR EMPLOYMENT LITIGATION

A reasonable fee award must be based upon the prevailing hourly rate charged in the relevant market for similar litigation. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). More specifically, "[a] reasonable hourly rate is the prevailing

---

[31] Roberts Decl. ¶ 9.
[32] *Id.*

market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The prevailing attorneys' own customary or usual billing rates are an important factor to be considered by the court. *Blum*, 465 U.S. 886, 895; *Weissinger v. Murray*, No. 1:06-CV-1544-TWT, 2009 U.S. Dist. LEXIS 56789, at \*12 (N.D. Ga. July 2, 2009) ("The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of his market rate").

Here, Plaintiff's lead counsel, V. Severin Roberts, has practiced law since 2009 and risen to the level of Partner at Barrett & Farahany.[33]  His exemplary skill has been set forth *supra*.  He currently charges an hourly rate of $400.00, a rate he has charged since January 30, 2018. [34]  Prior to that date, his rate was $350.00 per hour. [35]  In 2017, this Court approved Mr. Robert's then-current rate of $350/hour as reasonable.  *Garmon v. Tuff TV Media Group, LLC*, Civil Action No. 1:15-cv-4394-ODE, Order [Doc. 76] at 6-7 (N.D. Ga. June 26, 2017).  In 2018, however, this Court approved a $400 hourly rate in a civil rights case for Jeffrey Filipovits, Partner at Filipovits Law, P.C. who has practiced since 2010.  *Whitley v. Hill*, Civil

---

[33] Roberts Decl. ¶¶ 2, 6.
[34] Roberts Decl. ¶ 1.
[35] *Id.*

25

Action No. 1:16-cv-03192-LMM, Order [Doc. 79] at 9-10 (N.D. Ga. Feb. 27, 2018). *See also*, *Whitley*, Declaration of Jeff Filipovits [Doc. 75-1] at ¶¶ 5-18 (N.D. Ga. Feb. 12, 2018). This indicates that – at the time Mr. Roberts' rate increased to $400/hour in early 2018 – that rate was appropriate in this market for a successful lead attorney with approximately 9-10 years' experience who has made Partner. *See also Eason v. Bridgewater & Assocs., Inc.*, Civil Action No. 1:11-cv-02772-TCB, Order and Judgment [Doc. 164] at 11-13 (N.D. Ga. June 9, 2015) (approving attorney Cheryl Legare's $400 hourly rate); *Eason*, Declaration of Cheryl B. Legare [Doc. 159-2] at ¶¶ 12-13, 21 (showing Ms. Legare used her 2014 rate of $400 and had been practicing law for approximately 12 years at that time).

Plaintiff's other attorney, Benjamin Stark, has practiced law since 2006 – including practicing in private practice since 2012 – and does the majority of the briefing for Barrett & Farahany, including the summary judgment briefing in this case.[36] In this role, he has been successful in achieving good summary judgment results for his clients, including achieving partial summary judgment in this case.[37] His is hourly rate is $350.00.[38] This Court has repeatedly approved this rate for Mr. Stark. *See Garmon*, Order [Doc. 76] at 6-7 (N.D. Ga. June 26, 2017); *Lowe*

---

[36] Stark Decl. ¶¶ 4-7.
[37] Stark Decl. ¶¶ 8-9.
[38] Stark Decl. ¶ 10.

*and Reynolds v. Atlas Logistics Group Retail Services (Atlanta), LLC*, Case No. 1:13-cv-02425-AT, Order [Doc. 165] at 9 (N.D. Ga. May 18, 2016).  In addition, Robert M. Lewis, based on his experience supervising Mr. Stark and his decades of experience with fees in the relevant community, testifies that Mr. Stark's $350/hour rate "is reasonable for his skill level and in keeping with the prevailing market rate."[39]

In considering Plaintiff's Counsels' experience and the reasonableness of their rates, it is worth comparing them to the experience and asserted hourly rates of Defendant's Counsel, particularly Natasha H. Moffitt.  A review of PACER shows Ms. Moffit as attorney of record on only <u>one</u> FLSA case in this District: this case.[40]  Yet, she claims – and sought to collect in the sanctions briefing for this case – an hourly rate of $910.00.  [Doc. 126, pp. 3-4].  In contrast, Mr. Roberts and Mr. Stark have, respectively, been counsel of record for 180 and 45 FLSA cases in this District.[41]  Without impugning Ms. Moffitt's skills as an attorney in her chosen fields, it is safe to say that Plaintiff's Counsels' FLSA experience in this District vastly exceeds her own.  That Mr. Roberts's and Mr. Stark's hourly rates in this

---

[39] Lewis Decl. ¶ 9.
[40] This is a fact of which the Court may take judicial notice.
[41] <u>Exhibit 6</u> (PACER records of FLSA cases in this District for Mr. Roberts); <u>Exhibit 7</u> (PACER records of FLSA cases in this District for Mr. Stark).

case are, respectively, approximately 44% and 38% of Ms. Moffitt's asserted hourly rate is – at the very least – strong evidence that their rates are not excessive.

As of November 21, 2019, Plaintiff's Counsel and support staff have incurred 586.98 hours of work in the representation of Watts resulting in $160,983.25 in fees based on their respective hourly rates set forth in the table below.

| Timekeeper | Role | Hours Spent | Hourly Rate | Total |
|---|---|---|---|---|
| V. Severin Roberts – Former Rate | Attorney | 10.55 | $350.00 | $3,692.50 |
| V. Severin Roberts – Current Rate | Attorney | 69.98 | $400.00 | $27,992.00 |
| Benjamin Stark | Attorney | 293.30 | $350.00 | $102,655.00 |
| Linda Petmecky | Paralegal | 198.95 | $125.00 | $24,868.75 |
| Diana Howe | Paralegal | 1.20 | $125.00 | $150.00 |
| Beth Barrett | Paralegal | 13.00 | $125.00 | $1,625.00 |
| **Total** | | **586.98** | | **$160,983.25** |

As itemized in Exhibit 8, Plaintiff also seeks recovery of litigation expenses incurred on Plaintiff's behalf for legal research, witness fees, deposition

transcripts, and vendor expenses (re: extracting and storing metadata) in the total amount of $8,942.36.[42]   One set of expenses – $2,809.14 in payments for consulting and monthly hosting to DSicovery and, later, Legility – may require further explanation.  After the Court ordered Plaintiff to produce metadata, these vendors were hired to assist with extracting and producing said metadata, and then to store it for potential use in this litigation through the end of the summary judgment phase.[43] Other expenses are largely self-explanatory.

In summary and as detailed in counsel's time records, attorney V. Severin Roberts, has an hourly rate of $400.00 – increased from $350.00 early in this litigation – and served as lead counsel for Plaintiff in this action. In particular, Mr. Roberts was responsible for, *inter alia*: (1) handling most aspects of discovery, including taking six depositions and overseeing significant written discovery; (2)

---

[42] <u>Exhibit 8</u> includes expenses – such as witness fees and filing fees – that might also be included in a Bill of Costs.  However, under this Court's Local Rules, it appears a Bill of Costs is not to be filed until "after the entry of judgment."  N.D. Ga. LR 54.1.  As there has not yet been an entry of judgment in this matter, it appears a Bill of Costs is premature.  That said, it is not Plaintiff's intention to seek double recovery for any items that could also be included in a Bill of Costs.  Rather, Plaintiff is simply identifying all recoverable expenses at this time out of an abundance of caution.  To the extent it is necessary to designate expenses as recoverable under a standard Bill of Costs or recoverable under 29 U.S.C. § 216(b), Plaintiff will file the pleadings making those designations at the appropriate time.

[43] Stark Decl. ¶ 15.

directing Plaintiff's overarching legal strategy; and (3) conducting all negotiations on Plaintiff's behalf.[44]

Attorney Benjamin A. Stark has an hourly rate of $350.00 and performed the majority of the attorney work for Plaintiff in this case under Mr. Roberts's direction.  In particular, Mr. Stark was responsible for, *inter alia*: (1) preparing Plaintiff for – and defending – her two depositions; (2) preparing Plaintiff's estimates of her hours worked in light of Defendant's document production; (3) preparing supplemental discovery responses in response to Defendant's demands; (4) drafting the successful Summary Judgment Motion and successfully opposing Defendant's Summary Judgment Motion; and (5) drafting Plaintiff's post-judgment briefing on attorneys' fees.[45]

Plaintiff also seeks recovery of work performed by support staff (primarily paralegal Linda Petmecky) at an hourly rate of $125.00.  This Court has already approved the $125 hourly rate for Ms. Petmecky and the other paralegals involved, Diana Howe and Beth Barrett.  *Garmon v. Tuff TV Media Group, LLC*, Civil Action No. 1:15-cv-4394-ODE, Order [Doc. 76] at 6-8 (N.D. Ga. June 26, 2017).

In sum, the requested rates compare favorably to the rates known by Plaintiff's Counsel to be charged generally in this community (the Atlanta area) for

---

[44] Roberts Decl. ¶¶ 1, 10.
[45] Stark Decl. ¶¶ 10-11.

civil rights and employment litigation by attorneys with comparable experience and reputation. In addition, Plaintiff has provided declarations from highly respected and well-credentialed Atlanta attorneys averring to the skill and expertise of Watts's attorneys and confirming that Counsel's requested rates are reasonable and appropriate. This Court has approved the requested rates for Counsel or for other attorneys with similar experience.

**b.   ADJUSTMENTS TO THE LODESTAR ARE NOT WARRANTED**

As noted above, once the lodestar has been established, the Court can then determine whether any adjustments to the lodestar are appropriate. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). As demonstrated throughout this brief there is no basis to adjust the lodestar in this case. Plaintiff filed, litigated, and obtained a judgment (in the form of a Court-approved settlement) on her one and only claim before this Court. As such, all of Plaintiff's hours are recoverable.

Defendant may argue that Plaintiff's attorneys' fees should be reduced on the grounds that she was only "partially successful" because her ultimate recovery was less than the amount she initially claimed she was owed. Or Defendant may argue that the attorneys' fees are excessive because they are over 9 times greater than Plaintiff's recovery. However, this Court has rejected both arguments:

> Applying established Eleventh Circuit law, a downward adjustment to the lodestar is merited only if the prevailing party was partially

31

successful in its efforts. . . It is true that [Plaintiff] was awarded only about one-third of the damages that she claimed. But that is not remarkable in a case where an FLSA plaintiff has to reconstruct her hours. And it is true that the lodestar amount is more than ten times that of her actual and statutory damages. But that is not remarkable in an individual FLSA case seeking overtime. Accordingly, I decline to reduce the lodestar amount for limited success on the merits of the claim.

*Cain v. Almeco USA, Inc.*, No. 1:12-CV-3296-TWT, 2014 U.S. Dist. LEXIS 70900, at *3-4 (N.D. Ga. May 23, 2014).[46]

As noted above, the Court-approved settlement in this case reflects that Plaintiff achieved very successful results – $16,000.00 out of $18,980.48 in claimed unpaid overtime. The results obtained were significant, especially given the small and finite amount of damages sought.

While Plaintiff contends that the fact her Court-approved settlement constitutes a substantial portion of what she sought to recover obviates the need for additional analysis on the issue of adjustments to the lodestar, Plaintiff also

---

[46] See also *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984) ("The availability and award of attorney fees under § 216(b) must reflect the obvious congressional intent that the policies enunciated in § 202 be vindicated, at least in part, through private lawsuits charging a violation of the substantive provisions of the wage act"); *Fegley v. Higgins*, 19 F.3d 1126, 1134-1135 (6th Cir. 1994) (Courts should not place an undue emphasis on the amount of the plaintiff's recovery when an award of attorney's fees is to encourage "the vindication of congressionally identified policies and rights"); *James v. Wash Depot Holdings, Inc.*, 489 F.Supp.2d 1341 (S.D. Fla. 2007) (attorney's fee shifting provision of the FLSA designed to allow plaintiffs to recover their attorney's fees in spite of the small monetary nature of their claims).

provides the following citations to a handful of the myriad of cases properly making awards of significant attorney's fees where the plaintiff obtained a relatively small judgment.  See *Morris v. Eversley*, 343 F. Supp. 2d 234, 248 (S.D.N.Y.2004) (awarding reasonable attorneys' fees of $154,900 where plaintiff was awarded $16,000 in compensatory and punitive damages); *Bryant v. Jones*, Civil Action No. 1:04-cv-02462 at [Doc. 515] (N.D. Ga.) (Judge Duffey) (awarding $1.78 million in attorney's fees on award $74,000 to 2 of 4 plaintiffs); *Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (affirming an award of $245,456.25 in fees where plaintiffs had recovered $33,350 in both compensatory and punitive damages); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1353 (S.D. Fla. 2007) (plaintiff's total judgment equaled $3,493.62; plaintiff's counsel's fees equaled $114,021); *Perdomo v. Sears*, *Roebuck & Co.*, 1999 U.S. Dist. LEXIS 20881 (M.D. Fla. Dec. 3, 1999) (plaintiffs recovered $17,410.84 in damages; plaintiffs' counsel recovered $117,629.51 in attorney's fees); *Tyler v. Westway Auto. Serv. Ctr., Inc.*, 2005 U.S. Dist. LEXIS 45771 (S.D. Fla. 2005).

In sum, Plaintiff obtained a substantial verdict relative to the amount sought and her Counsel should be awarded their full fees.

WHEREFORE, Plaintiff respectfully requests that the Court award her attorney's fees in the amount of $160,983.25, and expenses in the amount of $8,942.36.

Respectfully submitted, this 22nd day of November, 2019.

**BARRETT & FARAHANY, LLP**

s/Benjamin A. Stark
Benjamin A. Stark
Georgia Bar No.  601867
*Attorney for Elaine Watts*

1100 Peachtree Street, N.E.
Suite 500
Atlanta, GA 30309
(404) 214-0120
bstark@bf-llp.com